UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CHRISTOPHER M. HUBBERT, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CHRISTOPHER LANE, )<br>)<br>Defendant. ) | No. 1:23-cv-01818-SEB-TAB |

**ORDER**

Plaintiff Christopher Hubbert is a prisoner who was once incarcerated at the Bartholomew County Jail ("Jail"). Dkt. 27 at 2. In this action, he alleges that Defendant Christopher Lane violated his Eighth and Fourteenth Amendment rights, as well as the Federal Rehabilitation Act ("the Rehabilitation Act") and Americans with Disabilities Act ("ADA"). *Id.* at 4. Defendant Lane moved for summary judgment, albeit belatedly. Dkts. 47, 48, 49. Mr. Hubbert responded in opposition, which clarified the issues for the Court on summary judgment. Dkts. 53, 54. Defendant Lane filed a reply in support. Dkt. 58.

For the reasons that follow, Defendant's motion for summary judgment, dkt. [47], is **granted in part** and **denied in part**.

    **I.**    **Legal Standard**

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572–73 (7th Cir.

1

2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). A court only has to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it need not "scour the record" for evidence that might be relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573−74 (7th Cir. 2017) (cleaned up).

A party seeking summary judgment must inform the district court of the basis for its motion and identify the record evidence it contends demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

## II.   Factual Background

Because Defendant moved for summary judgment under Rule 56(a), the Court views and recites the evidence in the light most favorable to Mr. Hubbert and draws all reasonable inferences in his favor. *Khungar*, 985 F.3d at 572–73.

### A.   The Parties

Mr. Hubbert was an inmate incarcerated at the Jail from May 2023 to April 2025. Dkt. 27 at 2; dkt. 53 at 1. Mr. Hubbert is blind. Dkt. 48-1 at 7, 143. According to Sheriff Lane, Mr. Hubbert "was encouraged to communicate when he needed help." Dkt. 49 at 21. But Mr. Hubbert believed the Jail should have had devices accessible for his blindness—specifically a device that had a feature that would "talk back" to him out loud. Dkt. 48-1 at 120-124.

2

Defendant Lane is the Sheriff of Bartholomew County, Indiana. Dkt. 48-9 at 1. The Sheriff, through the Jail Commander, was aware that Mr. Hubbert needed assistance using devices that required entry of a pin number and to see a screen. Dkt. 49 at 21. In response to Mr. Hubbert's request for accessible devices, Sheriff Lane "is not aware of whether such devices exist for correctional use." *Id.* at 22.

### B. Systems by which Inmates obtained Commissary and Entertainment

At the Jail, inmates use a kiosk called Keefe Edge to order commissary, among other things. Dkt. 48-2 at 3. Inmates have unique pin numbers used to order commissary and communicate on the kiosk. Dkt. 48-10 at 1. Inmates must log in with their pin number to see responses to communications. Dkt. 48-2 at 3. When an inmate orders a commissary item, the cost of the item, listed on the kiosk, is deducted from the inmate's trust account maintained by the Jail. *Id.* Friends and family can deposit money into the trust account by using a kiosk in the lobby at the jail or through a website. *Id.* Inmates can see their trust account balance on the kiosk. *Id.*

At the Jail, tablets can be used to access entertainment through a system called HomeWAV, Dkt. 48-2 at 4. Inmates must pay for entertainment, including audio books. *Id.* at 3-4. In other words, audio books are not free to inmates. *See id.* However, books are available for inmates to borrow at the Jail. Dkt. 58 at 9.[1]

Inmates have accounts with a company called HomeWAV which can be accessed through a unique pin assigned to the inmate. *Id.* Family and friends of the inmates can electronically deposit money into a HomeWAV account. *Id.* at 4; dkt. 48-11 at 2. Entertainment content is available for a limited time after purchase. Dkt. 48-2 at 4; dkt. 48-11 at 2. HomeWAV accounts are separate

---

[1] Books are available for inmates to borrow at the Jail. *See* dkt. 58 at 9. The record is unclear as to whether the Jail offers books in braille. *See* dkt.

3

from inmate trust accounts and are maintained by HomeWAV, not the Jail. Dkt. 48-2 at 2; dkt. 48-11 at 2.

### C. Mr. Hubbert's Access to Commissary and Entertainment, and Stealing of Funds

While housed at the Jail, Mr. Hubbert could not use the kiosk or HomeWAV without assistance; the person assisting him needed his pin number. Dkt. 48-1 at 50, 89-91, 114. A lieutenant contacted both Keefe and HomeWAV regarding the availability of devices accessible to people who suffer from blindness. Dkt. 48-5 at 3, 9-12. Neither Keefe nor HomeWAV offer devices accessible to a legally blind person. Dkt. 48-10 at 2; dkt. 48-11 at 2.

Mr. Hubbert concludes that other inmates were using his HomeWAV because he knew how much money should be in his account, but then when he went to use it, less money would be in his account. Dkt. 48-1 at 114. Mr. Hubbert had his pin number changed several times. *Id.* Changing his pin helped, but he still needed to seek assistance from other inmates to use the tablet, so he would end up giving up his new pin number again. *Id.*

Mr. Hubbert figured out who was stealing from him and complained about it via the grievance process. Dkt. 48-1 at 111. Mr. Hubbert believes that the Jail should have had alternative devices that should have been accessible for him to use, that talked back to him, rather than having to rely on another inmate. Dkt. 48-2 at 120-121.

### D. Mr. Hubbert's Requests for Accommodation

Mr. Hubbert filed numerous grievances while at the Jail, many of which dealt with inmates stealing from his HomeWAV and commissary accounts. *See* dkt. 48-2 at 37, 42-43, 95, 102-104. Some of his grievances involve being ignored by correctional staff when he tried to use his call button to ask for help. *Id.* at 83, 86, 87, 88 (revealing that call button system was down for over 2 weeks).

4

Mr. Hubbert filed a grievance on October 14, 2023, stating: "I need accessibility for the BLIND on the homewave and the kiosk so I can make calls and order commissary without giving access to another inmate. I don't really know to have access to my account and money and ordering as I have [sic] not been offered any assistance ever by COs, OICs, the Sheriff, Nursing Staff. No one offers a blind man help in here." (cleaned up). *Id.* at 74. The officer who responded to the grievance stated: "I have reached out to HomeWAV to ask this. Please ask an officer if you need help with something." *Id.*

Mr. Hubbert filed another grievance on December 9, 2023, stating: "Due to my disability I have to trust other inmates with my pin #. On December 5, 6, and 7 I could not log in all day due to my account being logged in elsewhere. By the time I was able to log in my music was no longer there. I am losing money and it needs to be reimbursed for my music and phone. I have hit the button and got my pin reset but it doesn't work because due to my homewav not being accessible to a vision impaired person such as myself I have to give my new pin out to use it." *Id.* at 79. The officer who responded to the grievance stated: "Will look into." *Id.*

Mr. Hubbert filed a grievance on February 6, 2024, stating: "I have lost money and time on my audio books and on my music I need my money refunded Homewave is messing up and I don't want to hear yall can't do it because have done it before. Please and thank you." (cleaned up). *Id.* at 90. The officer who responded to the grievance stated: "Service ticket placed." *Id.*

Mr. Hubbert filed a grievance on February 10, 2024, stating: "My songs on homeway have been wasted. I can't see the device to use it in any manner because it's not accessible to the blind, I have no way to call out or get mail read to me or check commissary funds." *Id.* at 93. The officer who responded to the grievance stated: "You purchased commissary on [illegible] looks like commissary is not an issue. You also submitted this grievance. If another inmate is unwilling to

help you with mail you can ask an officer for help. You were able to purchase songs so how were they wasted?" *Id.*

Mr. Hubbert filed another grievance on March 31, 2024, complaining that the gospel songs he purchased the day prior were all gone and he needed a refund. *Id.* at 94. The officer responded "will place ticket." *Id.*

### III. Discussion

Upon screening of the Amended Complaint, the Court allowed Mr. Hubbert to proceed on: (1) Rehabilitation Act claims; (2) ADA claims; (3) Eighth and (4) Fourteenth Amendment claims against Sheriff Lane. Dkt. 27 at 4. *See also* dkt. 28.

In response to Sheriff Lane's summary judgment motion, Mr. Hubbert concedes that Sheriff Lane is entitled to summary judgment on the Eighth Amendment claims, and the Rehabilitation Act and ADA claims as to programs and recreation. Dkt. 53 at 2-3. *Id.* Sheriff Lane is therefore entitled to summary judgment on the Eighth Amendment claims against him. Sheriff Lane is also entitled to summary judgment as to the Rehabilitation Act and ADA claims that pertain to programs and recreation.[2]

Mr. Hubbert *does* argue that Sheriff Lane failed to protect his commissary and phone funds and failed to provide him audio books for free. *Id.* Accordingly, the Court limits its analysis to Mr. Hubbert's remaining allegations: that Sheriff Lane failed to provide accessible means by which to purchase commissary and entertainment, and that he failed to provide Mr. Hubbert with accessible reading materials.

---

[2] Mr. Hubbert's response to summary judgment states: "Hubbert agrees Sheriff is entitled to summary judgment on One, Two, and Three." Dkt. 53 at 2. The Court construes this to refer the enumerated items in the paragraph that immediately precedes it on the first page of the response. However, the Court finds that issue "one" regarding tablets is intertwined with the issues of accessible devices for ordering commissary and entertainment, and accessible reading materials. Accordingly, there are material facts in dispute which preclude summary judgment on any claims regarding tablets.

To prevail on his claim under § 504 of the Rehabilitation Act and the related Americans with Disabilities Act, Mr. Hubbert must show that: (1) he is a qualified person, (2) with a disability, and (3) the Jail denied him access to a program or activity solely because of his disability. *Shaw v. Kemper*, 52 F.4th 331, 334 (7th Cir. 2022). Legal analysis under the two statutes is functionally identical. *Jaros v. Ill. Dep't of Corr.*, 684 F.3d 667, 671 (7th Cir. 2012). The statutory definition of an "individual with a disability" encompasses a person with "a physical or mental impairment that substantially limits one or more major life activities." *See* 29 U.S.C. § 705(20)(B); 42 U.S.C. § 12102(1)(A).

The parties do not dispute that Mr. Hubbert is a qualified person due to his blindness as a disability for purposes of his ADA and Rehabilitation Act claims.

Mr. Hubbert must next establish that he was denied the benefits of programs, services, or activities by reason of his disability. "Refusing to make reasonable accommodations is tantamount to denying access." *Jaros*, 684 F.3d at 672. "Whether a requested accommodation is reasonable is highly fact-specific, and determined on a case-by-case basis by balancing the cost to the defendant and the benefit to the plaintiff." *Dadian v. Vill. of Wilmette*, 269 F.3d 831, 838 (7th Cir. 2001). "Whether the requested accommodation is necessary requires a 'showing that the desired accommodation will affirmatively enhance a disabled plaintiff's quality of life by ameliorating the effects of the disability.'" *Id.* (quoting *Bronk v. Ineichen*, 54 F.3d 425, 429 (7th Cir. 1995)).

It is abundantly clear to the Court that Mr. Hubbert has requested reasonable accommodations for his disability as to the remaining claims. Mr. Hubbert's communications and grievances reference commissary orders that he suspects were stolen or requests for refund. *See* dkt. 48-2 at 37, 42-43. Further, Mr. Hubbert filed two grievances that specifically requested accessible means by which to order things from HomeWAV and commissary without having to

7

ask another inmate. Dkt. 48-2 at 74 ("I need accessibility for the BLIND on the homewave and the kiosk so I can make calls and order commissary without giving access to another inmate I don't really know to have access to my account and money and ordering as I have [sic] not been offered any assistance ever by COs, OICs, the Sheriff, Nursing Staff. No one offers a blind man help in here."); *id.* at 79 (Due to my disability I have to trust other inmates with my pin #. On December 5, 6, and 7 I could not log in all day due to my account being logged in elsewhere. By the time I was able to log in my music was no longer there. I am losing money and it needs to be reimbursed for my music and phone. I have hit the button and got my pin reset but it doesn't work because due to my homewav not being accessible to a vison impaired person such as myself I have to give my new pin out to use it).

But had Mr. Hubbert *not* filed grievances related to his remaining claims of accessible reading materials and accessible means by which to purchase commissary and entertainment, the Court finds that Mr. Hubbert's blindness is so obvious that no request would have been necessary under the ADA. To the extent that Defendant assumes that it was necessary for Mr. Hubbert to have specifically requested, say, audiobooks, *see* dkt. 58 at 8-9, he would be wrong. The ADA requires no such thing.

Rather, where "a disabled individual's need for an accommodation is obvious, the individual's failure to expressly 'request' one is not fatal to the ADA claim." *Phipps v. Sheriff of Cook Cnty.*, 681 F. Supp. 2d 899, 926–27 (N.D. Ill. 2009) (citing *Robertson v. Las Animas County Sheriff's Dept.,* 500 F.3d 1185, 1197 (10th Cir. 2007); *Kiman v. New Hampshire Dept. of Corrs.,* 451 F.3d 274, 283 (1st Cir. 2006) ("[T]he ADA's reasonable accommodation requirement usually does not apply unless 'triggered by a request.' This is because a person's disability and concomitant need for accommodation are not always known ... until the person requests an accommodation.

However, sometimes the person's need for an accommodation will be obvious; and in such cases, different rules may apply.") (citations, quotation marks, and brackets omitted)).

Mr. Hubbert's blindness is not in dispute and is rather obvious. Sheriff Lane admits in his summary judgment motion that the "jail commander was aware that [Mr. Hubbert] would need assistance using devices that required entry of a pin number and to see a screen." Dkt. 49 at 20. Viewing the facts in the light most favorable to Mr. Hubbert, the reasonable inference follows that Mr. Hubbert would likewise be unable to read a book due to his blindness. Accordingly, no specific request for accommodation was necessary as it relates to accessible reading materials, contrary to Sheriff Lane's arguments. *See* dkt. 58 at 8-10.

The Court must now evaluate whether Sheriff Lane denied Mr. Hubbert reasonable accommodations as to each of the remaining claims.

### A. Accessible devices used to purchase things including commissary and entertainment

The record reflects that inmates used unique pin numbers to order commissary and communicate on the Keefe kiosk, dkt. 48-10 at 1, as well as to purchase entertainment through HomeWAV. Dkt. 48-2 at 4. A lieutenant contacted both Keefe and HomeWAV regarding the availability of devices accessible to people who suffer from blindness. Dkt. 48-5 at 3, 9-12. Neither Keefe nor HomeWAV offer devices accessible to a legally blind person. Dkt. 48-10 at 2; 48-11 at 2. It is therefore well-settled that the devices available for use to inmates at the Jail were inherently inaccessible for use by blind people.

On summary judgment, Sheriff Lane argues that he "did not exclude [Mr.] Hubbert from jail programs or activities by failing to provide a reasonable accommodation." Dkt. 49 at 21. Sheriff Lane states that the "jail commander was aware that [Mr.] Hubbert would need assistance using devices that required entry of a pin number and to see a screen" and that [Mr. Hubbert] was

9

encouraged to communicate when he needed help." *Id.* But Sheriff Lane also maintains that because Mr. "Hubbert was able to order commissary, submit requests, make calls, and purchase music with assistance[, h]e was therefore not denied access to these devices." *Id.* at 22.

But Sheriff Lane does not specify what, if any, accommodation he provided to Mr. Hubbert given that he was clearly blind and could not see the screens of these devices to do anything—including access commissary and reading materials—by himself. As best the Court can tell, Sheriff Lane expected Mr. Hubbert to ask for help instead of providing any accommodation at all. But Sheriff Lane cannot win on those facts, because the dozens of pages of grievances he designated along with his summary judgment motion reveal that Mr. Hubbert specifically sought devices accessible to him and asked for help numerous times over a period of nearly a year and was ignored. Dkt. 48-2 at 37, 42-43, 95, 102-104.

Sheriff Lane fails to confront the fact that sighted inmates had immediate access to these devices to order commissary and entertainment, whenever they wanted, without waiting for assistance from a guard. The difference is that Mr. Hubbert needed assistance to use these devices, and as his grievances reveal, he could not count on correctional staff to help him. As a result, he had to ask other inmates for help.

But Sheriff Lane forcing Mr. Hubbert to rely on other inmates makes that "accommodation" inherently violative of the ADA. "If a prisoner needs help from other prisoners to access programs, however, the general rule is that the accommodation is ineffective and inadequate." *McDaniel v. Syed*, 115 F.4th 805, 824-25 (7th Cir. 2024) (citing *Wright v. New York State Dep't of Corrections*, 831 F.3d 64, 74, 79 (2d Cir. 2016) (reversing summary judgment for defense); *see also American Council of the Blind v. Paulson*, 525 F.3d 1256, 1269, 1274 (D.C. Cir. 2008) (affirming summary judgment for plaintiff; Rehabilitation Act's emphasis on self-sufficiency should ensure that

"enjoyment of a public benefit is not contingent upon the cooperation of third persons"). Especially having cited the *McDaniel* case his brief, dkt. 49 at 20, 21, 22, Sheriff Lane should not have moved for summary judgment on this set of facts. Sheriff Lane is not entitled to summary judgment on the claims related to accessible devices.

### B. Accessible reading materials

Because the process by which Mr. Hubbert had to purchase audiobooks was inherently violative of the ADA and there is no evidence of any other accessible reading materials for people suffering from blindness available at the Jail, Sheriff Lane is likewise **denied** summary judgment on the claims regarding accessible reading materials.

As to accessible reading materials, Mr. Hubbert has one chief complaint: that Sheriff Lane offered books to sighted inmates for free, but only provided audio books for a charge. Dkt. 53 at 2. Mr. Hubbert alleges in his complaint: "Mr. Lane has provided no visually accessible media to Hubbert." Dkt. 27 at 2. Mr. Hubbert does not allege that he requested visually accessible media, specifically audio books, from Sheriff Lane. *See* dkt. 27; *see generally* dkt. Mr. Hubbert generally states that he has filed grievances regarding all of his complaints, dkt. 54-1 at 5.

Sheriff Lane's briefing on summary judgment largely ignores the issue of accessible reading materials. *See* dkt. 58. Regardless, on reply, Sheriff Lane argues that there "is no record of [Mr.] Hubbert requesting access to audiobooks free of charge." Dkt. 58 at 8. He also argues "[w]hile the Sheriff knew that Hubbert would not be able to read any of the books available to borrow, he did not know that Hubbert was among the inmates who wanted to take advantage of this opportunity." *Id.* at 9. Sheriff Lane acknowledges Mr. Hubbert submitted grievances and kiosk messages, *id.* citing dkt. 48-2 at 31-48, 57-104, but states that none "concerned access to free

11

books." *Id.*

But the record is abundantly clear that Mr. Hubbert requested accessible means by which to order entertainment, including audiobooks, and items from commissary. *See* dkt. 48-2 at 74, 79, 90, 93, 94. *See generally id*. at 37, 42-43, 83, 86-87, 95, 102-104.

Sheriff Lane's narrow construction of the accessible reading materials misses the mark. It makes no difference whether Mr. Hubbert specifically requested audiobooks because the only way that Mr. Hubbert could even attempt to purchase an audiobook was through a system that was inherently inaccessible to people who suffer from blindness, which he admits. Therefore, the issue again is that Mr. Hubbert was required to ask for help from guards who ignored him or inmates who stole from him. Sheriff's Lane is not entitled to summary judgment on the claims against him related to accessible reading materials.

Viewing the record in the light most favorable to Mr. Hubbert, a reasonable jury could conclude that he requested accessible reading materials and for devices accessible to him, for ordering commissary, entertainment, or otherwise, and that Sheriff Lane denied him reasonable accommodations.

Sheriff Lane is entitled to summary judgment only on the ADA and Rehabilitation Act claims related to programs and recreation.

### IV.   Conclusion

For the foregoing reasons, Defendant's motion for summary judgment, dkt. [47], is **granted in part** and **denied in part.**

Sheriff Lane is entitled to summary judgment on the Eighth Amendment claims, and the Rehabilitation Act and ADA claims as to programs and recreation. Dkt. 53 at 2-3 (as conceded in

Mr. Hubbert's response in opposition). Summary judgment is denied the ADA claims regarding accessible reading materials and accessible devices to order commissary and entertainment.

The magistrate judge is requested to hold a status conference to discuss the scheduling of a settlement conference and the parties' readiness for trial, scheduled to begin on February 23, 2026.

**IT IS SO ORDERED.**

Date: 12/23/2025

_____
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

CHRISTOPHER M. HUBBERT
282862
MIAMI - CF
MIAMI CORRECTIONAL FACILITY
Inmate Mail/Parcels
3038 West 850 South
Bunker Hill, IN 46914-9810

All Electronically Registered Counsel

Magistrate Judge Tim Baker